UNITED STATES

v.

**Mose B. SHELWOOD, 428 06 6752, Lance Corporal (E–3), U. S. Marine Corps.**

**NCM 80 0187.**

U. S. Navy Court of Military Review.

Sentence Adjudged 6 Sept. 1979.

Decided 29 Jan. 1981.

LCDR P. B. Haskel, JAGC, USN, Appellate Defense Counsel.

LT Anne L. MacArthur, JAGC, USN, Appellate Government Counsel.

Before BAUM, PRICE and EDWARDS, JJ.

EDWARDS, Judge:

Appellant has assigned four errors before this Court:

I

THE COURT–MARTIAL ORDER ERRONEOUSLY RECITES THE SENTENCE.

II

APPELLANT'S REQUEST FOR TRIAL BY MILITARY JUDGE ALONE WAS NOT "UNDERSTANDINGLY MADE" (*MCM*, 1969 (REV.), PARA. 53*d*) AND THEREFORE SHOULD NOT HAVE BEEN ACCEPTED BY THE MILITARY JUDGE.

III

PROSECUTION EXHIBIT 2 (A AND B) WERE INADMISSIBLE OVER DEFENSE OBJECTION ABSENT ANY SHOWING THAT APPELLANT HAD THE OPPORTUNITY TO REBUT THE ADVERSE SERVICE RECORD ENTRIES OR EVEN KNEW OF THE EXISTENCE OF ONE OF THEM.

## IV

THE APPROVED SENTENCE IS IN-
APPROPRIATELY SEVERE.

We agree with Assignment of Error I. As-
signments II, III, and IV are rejected. We
will discuss assignments I, III, and IV.

## I

The Court-Martial Order erroneously re-
flects that the sentence included forfeiture
of all pay and allowances. The military
judge expressly excluded allowances from
the forfeitures. Our action will correct this
error.

## III

Appellant contends that entries A and B
of Prosecution Exhibit 2, see Appendix A,
are inadmissible hearsay because they do
not come within the official records excep-
tion to the hearsay rule, arguing that they
do not comply with paragraph 1000.3c of
MCOP 1070.12c, the Marine Corps Individu-
al Records Administration Manual (IRAM),
and Article 1110, *U. S. Navy Regulations,
1973*. A closer reading of IRAM paragraph
1000.3c and a better understanding of the
IRAM is in order.

> IRAM paragraph 1000, in part, states:
> 1. Every Marine has an official person-
> nel file at Headquarters, U. S. Marine
> Corps, which provides a complete military
> history of his/her career in this branch of
> the Armed Forces.
>
> .      .      .      .      .
>
> 3. *Unfavorable matter.* Items of an un-
> favorable nature will be placed in person-
> nel files maintained at Headquarters, U.
> S. Marine Corps, in the following manner:
>
> .      .      .      .      .
>
> c. *Enlisted Personnel Files*
>    (1) Matters of an unfavorable nature
> will not be filed in an enlisted person-
> nel file until such matter has been re-
> ferred to him/her and the Marine con-
> cerned has had an opportunity to make

a statement with respect thereto, in
accordance with U. S. Navy Regula-
tions 1973, Article 1110.

■ Prosecution Exhibit 2, which in-
cludes entries A and B, is the page 11 from
appellant's service record book (SRB); the
SRB is not the "official personnel file at
Headquarters, Marine Corps" that is the
subject of the proscription contained in
IRAM paragraph 1000.3c. Entries on page
11 of the SRB are controlled by IRAM
paragraph 4013. Nowhere in paragraph
4013 is there a provision similar to para-
graph 1000.3c. Paragraph 4013 is replete
with examples reporting the factual predi-
cates of matters of an unfavorable nature
which should be entered on page 11 of an
SRB, with no requirement that the entry be
referred to the Marine or affording the
Marine an opportunity to make a state-
ment. Appellant's reliance on IRAM para-
graph 1000.3c for objecting to his SRB en-
tries is misplaced.

The second prong of appellant's argu-
ment is that the entries marked A and B on
Prosecution Exhibit 2 are "adverse matter"
and because they were not maintained in
accordance with departmental regulation
they are precluded from admittance into
evidence. Article 1110, *U. S. Navy Regula-
tions, 1973*. The issue is whether the en-
tries contained on page 11 of the SRB con-
stitute the "adverse matter" envisioned to
come within the proscription of U. S. Navy
Regulations. We think not. The subject of
the intent and history of Article 1110, *U. S.
Navy Regulations, 1973*, has been addressed
by the Judge Advocate General of the Navy
in his opinion contained in correspondence
to the Commandant of the Marine Corps.
Opinion of the Judge Advocate General of
the Navy JAG:131.4:JLW:cse Ser 13/5124
of 7 March 1978 (enclosure (14) to *Off The
Record* Issue No. 73). See Appendix B.
From this letter we can see that the genesis
and subsequent history of this Article is to
preclude certain limited types of material
from being included within the official per-
sonnel record. From the original intended

"reports of fitness" or "correspondence relating thereto" to the expanded view precluding the filing of any document containing unfavorable information in a service record without the knowledge or comment of the individual concerned, the proscription is limited to entries which reflect opinions rather than facts.

Whenever entries of this type are subjected to analysis as to whether they are opinion or fact it is possible to "dance on the head" of the proverbial "pin." In engaging in such dances one must not look at page 11 entries of the SRB out of context. The SRB is designed for recording, *inter alia*, "pertinent events" which affect a Marine's military service. IRAM paragraph 4000.1. By any criterion, a "pertinent event" in a Marine's military service is when the Marine's commanding officer, in exercising his responsibilities as commanding officer and practicing the traditional concepts of Marines Corps leadership, counsels the Marine as to what is perceived as substandard performance. *See* paragraph 1100, Marine Corps Manual, 1980. The "pertinent event" is the counseling; the recordation of that event is a "fact."

We can not help but note that a primary consideration in sentencing is the tailoring of a sentence to fit the crime and the offender. It follows that the military judge must be provided relevant material concerning the accused. As was stated by Judge William E. Doyle, of the Tenth Circuit United States Court of Appeals,

> Unless a court has background information concerning the accused, he must rely on statements from the adversaries concerning matters in aggravation or mitigation of a sentence. This is obviously inadequate for the present day idea that criminal justice, and particularly the sentence, is to be administered as factually as possible, and on an individual basis. The ancient hunch method is long since

discredited. If the sentence is not to be pronounced upon any disciplinary or revenge basis, the facts about the defendant and his offense are needed.[1]

It equally follows that the information in Prosecution Exhibit 2, entries A and B, is provided for in the military justice system.[2] To accept appellant's contention would fly in the face of development of a rational basis upon which a sentence can be determined. In addition, at paragraph 75d, MCM, a safeguard provision is made for objection to data which is inaccurate or incomplete.

The entries were made in conformance with the IRAM and *U. S. Navy Regulation, 1973* and were thus admissible under the provisions of paragraph 75d, MCM. *See United States v. Brown*, 10 M.J. 589 (N.C.M. R.1980). To further restrict the introduction of such entries would be to encourage the "hunch method" of sentencing.

## IV

█ The sentence was appropriate, considering the nature of the offense, the character of the offender, and the protection of the public interest. I view appellant's argument not so much that the sentence was inappropriate generally but that it is inappropriate when compared to his co-actors. I find nothing in this case which indicates that the community's sense of justice as manifested in the sentence is so harsh as to cry out for sentence equalization. *United States v. Usry*, 9 M.J. 701 (N.C.M.R.1980).

The findings and sentence as approved on review below are affirmed. A supplemental Court-Martial Order shall be issued to accurately reflect the adjudged forfeitures. All rights, privileges and property of which appellant may have been deprived by virtue of this error will be restored.

Judge PRICE concurs.

1. J. BURNS AND J. MATTINA, SENTENCING 123 (1978) (published by National Judicial College)

2. Paragraph 75d, *Manual for Courts-Martial, 1969 (Rev.)* (MCM).

BAUM, Senior Judge (concurring in part/dissenting in part):

I concur with the majority's action with respect to assignments I and II; however, I disagree with the treatment of assignments III & IV.

Article 1110, *U. S. Navy Regulations, 1973* provides that:

Adverse matter shall not be placed in the record of a person in the naval service without his knowledge.... such matters shall be first referred to the person reported upon for such statement as he may choose to make. If the person reported upon does not desire to make a statement, he shall so state in writing.

The language of this regulation is clear and unambiguous. I do not accept what I see as an attempt by the Marine Corps to bypass its requirements by making the regulation applicable only to a certain "official personnel file at Headquarters, Marine Corps" and not applicable to an official service record book. In addition, I reject the limited definition of "adverse matter" adopted by the majority. The opinion of the Judge Advocate General of the Navy, as expressed in correspondence to the Commandant of the Marine Corps, to the contrary notwithstanding, I find no basis for changing the plain meaning of "adverse matter" as used in Article 1110, *U. S. Navy Regulations, 1973* and limiting that Article to adverse "opinion" while making it inapplicable to adverse "facts." For this reason, I also disagree with this Court's decision in *United States v. Brown*, 10 M.J. 589 (N.C.M.R. 1980).

In the instant case two entries were placed in appellant's service record book reflecting that he had been counseled. One entry related to counseling for unsatisfactory conduct and marginal performance; the other related to unsightly personal appearance and undependability. In my view such entries contain "adverse matter" which, under the terms of Article 1110, *U. S. Navy Regulations, 1973*, shall not be placed in the record of a person in the Naval service without his knowledge and without first referring the matter to that person for such statement as he may choose to make. Here, we know the first entry was made with appellant's knowledge because he signed it but the second entry provides no indication that it was made with appellant's knowledge. Moreover, with respect to both entries there is no showing that the matters contained therein were referred to appellant for such statement as he might choose to make and they do not reflect that appellant desired not to make a statement. Without such a showing appellant's signature acknowledging the entry does not, in my view, fully satisfy the requirements of Article 1110, *U. S. Navy Regulations, 1973*. Accordingly, I would find that both of these entries were improperly admitted at trial because, upon objection by the defense, the prosecution failed to demonstrate that the entries were made in accordance with departmental regulations.

I would reassess the sentence, excluding these entries from consideration, and upon reassessment would reduce the confinement as urged in Assignment of Error IV.

## APPENDIX A

### ADMINISTRATIVE REMARKS (1070)

| DATE: | DATE: | BLOOD TYPE |
|---|---|---|
| Articles UCMJ explained to me this date as required by Article 137, UCMJ. | Articles UCMJ explained to me this date as required by Article 137, UCMJ. | CLASS SWIMMER _____ (DATE) |
| (Signature) | (Signature) | BY DIRECTION |

780312 HQSVCCO 2D TkBn 2dMarDiv FMF CamLej; Counselled this date on my unsatisfactory conduct and marginal performance and have been warned that further action of this nature could result in an administrative discharge.

Ⓐ

x *Mose B. Shelwood* SNM

*R. R. Stuart* Acting

780728: HQSVCCO 2DTKBN 2DMARDIV FMF CAMLEJ: 48 HOUR FORWARDED TO NOK THIS DATE CONCERNING SNM STATUS.

*S. K. Nudnall* CO

780727: HQSVCCO 2DTKBN 2DMARDIV FMF CAMLEJ: PHONE CALL TO NOK MADE ON 780727 WITH

*S. K. Nudnall* CO

780 HQSVCCO, 2dTKBn, 2dMarDiv FMF CLNSY NC: Prior to making a decision whether to accept reject proceedings in accordance with the Art 15, UCMJ or at a Summary Court Martial, I have (have not) been offered the right to confer with independent lawyer counsel (qualified in the sense of Art 27(1) UCMJ), concerning the ramifications of such a decision.

*Mose B. Shelwood* *S. K. Nudnall* CO

RLT 4TH MAR DET N ... FPO NY ...

RLT 4TH MAR DET N. ... FPO NY 09502

780824
781031
DA US DEPN RESTR 720520

*S. K. Nudnall* CO

780824

781031,
BOLD GUARD-78 FROM 780919 TO 780922.

*S. K. Nudnall* CO

781206; CoB, 2dTkBn, 2dMarDiv, FMF, CamLej SNM counselled this date on unsightly personal appearance and undependability. Marine has tendency to be tardy from company/platoon formations.

Ⓑ

*(signature)* CO

781229: Co B, 2d TkBn, 2d MarDiv, FMF SNM was issued the new DD 2MC revised/ Geneva Convention Card this date. Old card was lost. New Card # 7565273.

*Charles E. Ken* ByDir

CERTIFIED A TRUE COPY
*M.C. Whotey*
Major USMC
I.C.
PROSECUTION EXHIBIT 12-E-5

| SHELWOOD, Mose B | 428 06 6752 | |
|---|---|---|
| NAME (last, first, middle) | SSN | |

NAVMC 118 (11) (REV. 2-76) SN: 0000-00-000-2704 U/I: SH B
PREVIOUS EDITIONS WILL BE USED. 11. _____

APPENDIX B      . . .

DEPARTMENT OF THE NAVY
OFFICE OF THE JUDGE ADVOCATE GENERAL
WASHINGTON, D. C. 20370

IN REPLY REFER TO

JAG:131.4:JLW:cse
Ser 13/5124
7 March 1978

From:   Judge Advocate General
To:     Commandant of the Marine Corps

Subj:   Filing of adverse matter in enlisted personnel files maintained at
Headquarters, U.S. Marine Corps

Ref:    (a) CMC ltr JAM:RCY:kgr of 30 Jun 1977
        (b) MCO P1070.12C of 8 Jul 1975, Subj: Marine Corps Individual
        Records Administration Manual (IRAM) w/changes

---

1. Reference (a) generally requests the opinion of the Judge Advocate General as to whether the notice and comment requirement of article 1110, *U. S. Navy Regulations, 1973*, prohibits the filing of the following items, listed in paragraph 1000.3c(2) of reference (b), in enlisted personnel files maintained at Marine Corps Headquarters without notifying the individual concerned and affording him an opportunity to comment in writing on the entry:

a.  court(s)-martial orders and memorandums reflecting finally approved convictions;

b.  FBI fingerprint reports and related correspondence;

c.  report of civilian arrests and related correspondence reflecting finally approved convictions;

d.  reports of absentees and deserters and related correspondence;

e.  waivers of fraudulent enlistments and related correspondence;

f.  reports and correspondence relating to administrative discharge action where the Marine is an unauthorized absentee at the time of discharge or is otherwise unavailable for statement;

g.  denial or termination of security clearance for cause.

2. By way of background, it is noted that article 1701.8 of *U. S. Navy Regulations, 1948*, required notice and opportunity for comment prior to the filing of adverse material in the personnel records of officers only. The Judge Advocate General, when commenting on the 1970 draft revision of *U. S. Navy Regulations, 1948*, recommended the following change to proposed article 1109 which, as originally drafted, substantively restated article 1701.8:

*Proposed article 1109.* Change the title of the article to read "ADVERSE MATTER IN THE RECORD OF A MEMBER OF THE NAVAL SERVICE"; substitute the words "the record of a member of the naval service" for the words "an officer's record" in line one; substitute the word "member" for the word "officer" in lines four and five. [JAG:131.2:TKW:jgd Ser 665 of 22 Jan 1971 at p. 12 of encl (1).]

The following rationale was offered for the proposed change:

*Reason.* No justifiable reason is seen for limiting this article to officers. Enlisted men, especially those in pay grades E–7 through E–9, have the same stake as officers in their permanent records. (It is recognized that this suggested change may constitute an administrative burden and it is suggested that comment thereon be obtained from the Chief of Naval Personnel and Commandant of the Marine Corps). [*Id.*]

The change proposed by this office was promulgated by the Secretary of the Navy in article 1110, *U. S. Navy Regulations, 1973*. That article provides as follows:

*Adverse Matter in the Record of a Person in the Naval Service.*

Adverse matter shall not be placed in the record of a person in the naval service without his knowledge. Except for the medical and dental entries referred to in the following article, such matter shall be first referred to the person reported upon for such statement as he may choose to make. If the person reported upon does not desire to make a statement, he shall so state in writing.

It is clear from the language of article 1110 that no distinction can be drawn between the criteria for filing adverse matter in the records of officer and enlisted personnel. *Compare* BUPERSMAN 5030160.5 *with* BUPERSMAN 5030200.2. It is further evident from the genesis of article 1110 that the importance of enlisted records on career development prompted the modification of former article 1701.8.

3. It is noted that paragraph 1000.3.c(2) of reference (b) characterizes the above-listed record entries as "unfavorable matter" which may be filed in enlisted personnel files without compliance with the requirement of article 1110. As such, it is considered that reference (b) concludes that the listed items either contain "adverse matter" within the meaning of article 1110 but are excepted from the article's coverage, or that the items, although containing "unfavorble matter," do not contain "adverse matter" within the meaning of article 1110.

4. Assuming the items listed in paragraph 1 were considered to contain "adverse matter" within the meaning of article 1110, the question arises as to whether the provisions of that article may be waived to permit the filing of that matter in a member's personnel record without first notifying and affording him an opportunity to comment. It is beyond contention that article 1110 provides a member of the naval service a procedural right to be notified of and given an opportunity to comment on "adverse matter" before it is filed in his naval record. Whether this procedural right may be waived unilaterally by the Department of the Navy depends on the extent to which

the Department of the Navy is bound by *U. S. Navy Regulations.* *U. S. Navy Regulations* are promulgated by the Secretary of the Navy with the approval of the President. The Supreme Court has held in three important decisions that, as a general rule, the Government is bound by its own regulations to the same extent as are the individuals whom the regulations affect. *Vitarelli v. Seaton*, 359 U.S. 535 (1959); *Service v. Dulles*, 354 U.S. 363 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Regardless of terminology, whenever a waiver of regulations has been upheld, the guiding principle enunciated has been avoidance of a prejudicial impact upon those subject to the regulation. *See American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532 (1970); *N. L. R. B. v. Monsanto Chemical Company*, 205 F.2d 763 (8th Cir. 1953). In the instant case, the regulations themselves contain no exception to the rule that "adverse matter" shall not be filed in the record of a member of the naval service without his knowledge and opportunity to comment. In addition, given the importance of personnel records, a waiver of the notice-and-comment requirement of article 1110 would undoubtedly have a prejudicial impact in individual cases. Accordingly, it is the opinion of the Judge Advocate General that the notice-and-comment requirement of article 1110, *U. S. Navy Regulations, 1973*, may not be waived unilaterally.

5. Although the question of whether article 1110 may be modified by waiver has been answered in the negative, the issue remains as to whether the listed record entries contain "adverse matter" within the meaning of article 1110. The term "adverse matter" as it appears in *U. S. Navy Regulations* has never been defined. Absent a definition, the term should be interpreted in accordance with its historical use.

6. The prohibition of article 1110 initially appeared in article 237, *U. S. Navy Regulations, 1893*, which, in dealing with "unfavorable" matter reported in officer fitness reports only, provided that:

Answers to queries from 1 to 6 inclusive shall be either "Excellent", "Good",

"Tolerable", or "Not Good", and must be written by the officer signing the report. Should the answer to any query be "Not Good", or otherwise of an unfavorable nature, the reasons for such answer must be clearly stated, and a copy of that portion of the report furnished to the officer concerned, who shall be granted a reasonable time to prepare such written statement in regard to it as he may desire to make, which statement shall be indorsed and forwarded with the report. Should the officer concerned not desire to make a statement, he will write a communication to that effect.

A review of subsequent editions of *U. S. Navy Regulations* indicates that not until 1948 was the language of article 237 modified to use the term "adverse matter" and to require affirmatively that an officer have knowledge of and be given an opportunity to comment on such matter prior to its filing in his "official record" vice its inclusion in his fitness report. Article 1701, *U. S. Navy Regulations, 1948*, specified, however, what material could be recorded in an officer's official record and, by implication, limited "adverse matter" to unfavorable information contained in certain record entries. Paragraphs seven and eight of article 1701 provided that:

7. The record of an officer maintained by the Chief of Naval Personnel (Commandant of the Marine Corps) shall include the following material pertaining to his qualifications and performance of duty:

(a) Reports of fitness.

(b) Extracts from the findings and recommendations of courts and boards concerning the officer.

(c) Copies of citations and letters of commendation or censure.

(d) Statement of the officer in reply to any adverse matter in his record.

8. (a) Adverse matter shall not be placed in an officer's record without his knowledge. It shall be first referred to the officer reported upon for such official statement as he may choose to make in reply. If the officer reported upon desires to make no statement, he shall so state officially in writing.

(b) When a report of fitness containing adverse matter, or any correspondence relating thereto, is sent to an officer, it shall be sent direct, addressed in his name. The officer concerned shall return any communication so received, together with his statement in reply to the Chief of Naval Personnel (Commandant of the Marine Corps) via the officer by whom the original report was completed and via the officer or officers through whom such report was forwarded.

It is noted that subparagraph 7.(d) of former article 1701 does not create an affirmative duty to solicit a response to "adverse matter" filed in an officer's record, but rather, requires that any response so made shall be filed in the officer's record. Subparagraph 8.(a), however, does create an affirmative duty to refer "adverse matter" to the officer for his comment prior to its recording in his record. Although subparagraph 8.(a) does not specifically limit the source of the "adverse matter," subparagraph 8.(b), the technical instruction for implementing subparagraph 8.(a), refers only to "adverse matter" contained in "reports of fitness" or "correspondence relating thereto." Notwithstanding the fact that subparagraph 8.(a) employs the term "adverse matter" in a broad sense, when read in conjunction with subparagraph 8.(b), the clear implication is that the "adverse matter" referred to is that contained only in "reports of fitness" or "correspondence relating thereto."

7. Although the language of *U. S. Navy Regulations, 1893*, and *U. S. Navy Regulations, 1948*, imply that a definition of the term "adverse matter" should be limited to unfavorable information contained in "reports of fitness" or "correspondence relating thereto," in practice the prohibition against filing unfavorable information in a service record without the knowledge or comment of the individual concerned has been expanded to preclude the filing of any document containing such information which reflects *opinion* rather than *fact*.

*See* JAGMAN 0102e(4). In this regard, it is noted that each of the record entries listed in paragraph 1 reflect factual determinations, and that none contains matters of opinion. Consequently, unfavorable information contained in any of the record entries listed would not constitute "adverse matter" within the expanded meaning of that term.

8. In view of the foregoing analysis of the evolution of the prohibition of article 1110, *U. S. Navy Regulations, 1973*, and the development of the term "adverse matter," and in view of the fact that there is no indication that the drafters of *U. S. Navy Regulations, 1973*, intended to depart from the historical genesis of the term "adverse matter," but rather, intended merely to have the same rule apply to enlisted personnel that had applied to officers under article 1701, *U. S. Navy Regulations, 1948*, it is the opinion of the Judge Advocate General that unfavorable information contained in any of the record entries listed in paragraph 1 is not "adverse matter" within the meaning of article 1110. Accordingly, that article does not require such information to be referred to the individual concerned, enlisted or officer, for his information and comment prior to its being filed in his personnel record. However, the Privacy Act (5 U.S.C. § 552a) requires that each Federal agency maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President and that records maintained for use by an agency in making any determination about any individual must be maintained with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness to the individual in the determination. In addition, subsections 552a(d)(2)–(4) of the Act provide an independent means by which an individual may contest the accuracy of any information recorded in his service record; and, if, upon request, such information is not expunged from his record, his statement challenging the information must accompany any disclosure of the information.

(s) C. E. McDOWELL
Acting Judge Advocate General