UNITED STATES, Appellee,

v.

Mose B. SHELWOOD, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 40615.
NCM 80–0187.

U. S. Court of Military Appeals.

April 4, 1983.

bery and robbery, in violation of Articles 81 and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 922, respectively. The military judge sentenced appellant to a bad-conduct discharge, confinement at hard labor for 2 years, total forfeitures, and reduction to E–1. The convening authority approved the sentence, and the Court of Military Review affirmed. *United States v. Shelwood,* 10 M.J. 755 (1981). The Acting Judge Advocate General of the Navy certified the following issue:

> WAS THE UNITED STATES NAVY COURT OF MILITARY REVIEW CORRECT, AS A MATTER OF LAW, WHEN IT REJECTED THE APPLICABILITY OF U.S. NAVY REGULATIONS, 1973, ARTICLE 1110, TO PROSECUTION EXHIBITS 2A and 2B?

In addition, we granted review of the following issue assigned by appellate defense counsel:

> DID THE U.S. NAVY COURT OF MILITARY REVIEW UTILIZE A LEGALLY ERRONEOUS STANDARD IN DETERMINING THAT APPELLANT'S SENTENCE TO CONFINEMENT AT HARD LABOR SHOULD NOT BE REDUCED TO APPROXIMATE THE SUBSTANTIALLY SHORTER SENTENCES OF HIS MORE CULPABLE CO-CONSPIRATORS?

I

■ After findings, trial counsel offered in aggravation of sentence prosecution exhibit 2, a "page 11" from appellant's service record book (SRB). *See* 10 M.J. at 759. Marked as entries "A" and "B" thereon were the following notations:

> (A) 780312 . . . Counselled this date on my unsatisfactory conduct and marginal performance and have been warned that further action of this nature could result in an administrative discharge.
>
> /s/ Moses B. Shelwood SNM
> /s/ G.R. Stewart Acting
>
> (B) 781206; . . . SNM counselled this date on unsightly personal appearance and undependability. Marine has tendency to be tardy from company/platoon formations.
>
> /s/ . . . [signature illegible] CO

For Appellant: *Lieutenant Louis F. Sadler,* JAGC, USNR (argued); *Lieutenant Commander Peter B. Haskel,* JAGC, USN, *Lieutenant Commander Stephen C. Baker,* JAGC, USN (on brief).

For Appellee: *Lieutenant Anita M. Fulton,* JAGC, USNR (argued); *Captain T.C. Watson, Jr.,* JAGC, USN, *Lieutenant Anne L. MacArthur,* JAGC, USN (on brief).

*Opinion of the Court*

COOK, Judge:

Pursuant to his pleas, appellant was convicted by general court-martial, military judge alone, of conspiracy to commit rob-

Trial defense counsel objected on the grounds of hearsay and that such administrative type entries amount to a denial of due process of the accused, and at this stage of the proceedings that such entries are now sought to be submitted before this court in aggravation in a manner in which they can increase the possible punishment awarded to the accused and that this amounts to a denial of the accused's due process rights.

After argument on the objection, the military judge stated:

Well, all right, I will accept it into evidence. The weight to be given to it is really something else. I think, technically, it's admissible.

Before this Court appellant contends, with somewhat more specificity,[1] that these entries were inadmissible in that they failed to comply with Navy regulations.

Paragraph 75d, Manual for Courts-Martial, United States, 1969 (Revised edition), the version of which was in effect at the time of appellant's trial, provided:

Under regulations of the Secretary concerned the trial counsel may, prior to sentencing, obtain and present to the military judge any personnel records of the accused or copies or summaries thereof.... Personnel records of the accused include all those records *made or maintained in accordance with departmental regulations* which reflect the past conduct and performance of the accused.

(Emphasis added.)

■ United States Navy Regulations, 1973, Article 1110, provides:

Adverse matter shall not be placed in the record of a person in the naval service without his knowledge.... [S]uch matters shall be first referred to the person reported upon for such statement as he may choose to make. If the person reported upon does not desire to make a statement, he shall so state in writing.

Further, a "[p]erson in the naval service ... [is] a person, male or female, appointed or enlisted in, or inducted or conscripted into, the Navy or the Marine Corps." U.S. Navy Regulations, 1973, Glossary at 77. Thus, before "[a]dverse matter" from appellant's records could be admitted against him at trial, it must appear that he was notified of the matter *and* offered an opportunity to make a statement.[2] Since such was not done here, the only question is whether these entries constitute "[a]dverse matter" within the meaning of Article 1110.

The Marine Corps Individual Records Administration Manual (IRAM) (July 8, 1975), which at the time of these entries promulgated "policies, procedures, and technical instructions for the administration of personnel records" for the Marine Corps (para. 0001), provided, at paragraph 1000:

1. Every Marine has an official personnel file at Headquarters, U.S. Marine Corps, which provides a complete military history of his/her career in this branch of the Armed Forces.

\* \* \* \* \* \*

3. *Unfavorable matter.* Items of an unfavorable nature will be placed *in personnel files maintained at Headquarters, U.S. Marine Corps,* in the following manner:

\* \* \* \* \* \*

c. *Enlisted Personnel Files*

(1) Matters of an unfavorable nature will not be filed in an enlisted personnel file until such matter has been referred to him/her and the Marine concerned has had an opportunity to make a statement with respect thereto, in

---

1. Under the new Military Rules of Evidence, not in effect at the time of appellant's trial, trial defense counsel's failure to identify the specific ground of the objection might have precluded review of this issue. Mil.R.Evid. 103(a)(1) and (d). However, in accordance with our more paternalistic, pre-MRE practice, we deem trial defense counsel's timely objection sufficient to preserve the issue for appeal.

2. As the prosecution was the proponent of the evidence, it was incumbent upon them affirmatively to demonstrate admissibility. In view of the minimal due process safeguards attending the creation of these "administrative" entries, we decline to entertain a presumption of regularity.

accordance with U.S. Navy Regulations 1973, Article 1110.

(Emphasis added.) The service record book, from which prosecution exhibit 2 was derived, is not maintained at Headquarters, U.S. Marine Corps. Thus, by its terms, paragraph 1000 is inapplicable to these entries.

 Nevertheless, the IRAM is not without significance to this case. At paragraph 1000.3c(2), the IRAM purports to exempt certain "[p]unitive unfavorable matter" from compliance with U.S. Navy Regulations 1973, Article 1110. Such matters include:

(a) Court(s)-martial orders and memoranda reflecting finally approved convictions.

(b) FBI fingerprint reports and related correspondence.

(c) Report of civilian arrests and related correspondence reflecting finally approved convictions.

(d) Reports of absentees and deserters and related correspondence.

(e) Waivers of fraudulent enlistments and related correspondence.

(f) Reports and correspondence relating to administrative discharge action where the Marine is an unauthorized absentee at the time of discharge or is otherwise unavailable for statement.

(g) Denial or termination of security clearance for cause.

This exemption, in turn, provided the subject for an opinion by the Acting Judge Advocate General of the Navy. *See* 10 M.J. at 760. Therein, the Acting Judge Advocate General traced the evolution of the concept of "[a]dverse matter" within the meaning of Article 1110. He noted that the forerunners to Article 1110 related only to officer fitness reports and correspondence pertaining thereto. He also observed that

in practice the prohibition against filing unfavorable information in a service record without the knowledge or comment of the individual concerned ha[d] been expanded to preclude the filing of any document containing such information

which reflect[ed] *opinion* rather than *fact.*

10 M.J. at 762.

Further, the Acting Judge Advocate General perceived

no indication that the drafters of *U.S. Navy Regulations, 1973,* intended to depart from the historical genesis of the term "adverse matter," but rather, intended merely to have the same rule apply to enlisted personnel that had applied to officers under ... [the predecessor to Article 1110].

Therefore, the Acting Judge Advocate General concluded that the "punitive unfavorable matter" listed in paragraph 1000.3c(2), IRAM, was not "adverse matter" within the meaning of Article 1110. Accordingly, he opined that it was not necessary to refer such information to the individual concerned for information and comment prior to its being filed in the individual's personnel records. *Id.* at 763.

This opinion of the Acting Judge Advocate General, in turn, was the basis for the Navy Court of Military Review's opinion in *United States v. Brown,* 10 M.J. 589 (N.C.M. R.1980), *pet. granted,* 12 M.J. 74 (1981). In Brown's court-martial, an entry from his service record book indicating that he was "Dropped for Cheating" from a military school was admitted in aggravation of sentence. Brown had not acknowledged the entry in writing, and had not had an opportunity to rebut it. Drawing on the Acting Judge Advocate General's thesis, the Navy court concluded that the entry was purely factual and thus not adverse within the meaning of Article 1110. Accordingly, the court ruled the entry admissible in accordance with Navy regulations. 10 M.J. at 591. On much the same analysis, the court below ruled that the "page 11" entries in appellant's service record book were facts, not opinion, and thus were admissible without compliance with Article 1110. *United States v. Shelwood, supra* at 756–57. We reject this view.

Whatever may be the validity of the Acting Judge Advocate General's views with respect to administrative processing of per-

sonnel records, we do not accept this fact/opinion interpretation of "adverse matter" for purposes of admissibility of evidence in criminal trials. In short, we agree with Senior Judge Baum that the language of Article 1110 is clear and unambiguous, and admits of no basis for changing its plain meaning. The implication of counselling for "unsatisfactory conduct and marginal performance," "unsightly personal appearance and undependability," and a "tendency to be tardy from company/platoon formations" is adverse without any stretch of the imagination. Thus, we hold that compliance with Article 1110 was a prerequisite to admissibility.

■ To be sure, entry "A" indicates on its face that the matter was referred to appellant. However, there is no evidence, either on the document or elsewhere, that appellant was afforded an opportunity to make a statement with respect to the entry. Entry "B" indicates neither that the matter was referred to appellant, nor that he was offered an opportunity to respond. These entries failed to satisfy the requirements of U.S. Navy Regulations, 1973, Article 1110. Accordingly, they were not admissible in evidence under paragraph 75*d*, Manual, *supra*.

■ Nevertheless, we conclude that no relief is warranted. First, it is apparent from his comments that the military judge attached little or no weight to the entries. Second, in view of the seriousness of the offenses of which appellant was convicted, as well as the three admissible records of nonjudicial punishment which were introduced in aggravation, we are satisfied that appellant was not prejudiced by the erroneous admission of the page 11 entries.

## II

■ Regarding the granted · issue, we have previously discussed sentence comparison in *United States v. Olinger,* 12 M.J. 458 (C.M.A.1982), and more recently in *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982). Under the precepts set forth in these cases, sentence relief by this Court is not warranted here.

Accordingly, the certified issue and the granted issue are answered in the negative; however, the decision of the United States Navy Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

FLETCHER, Judge (concurring):

The Government offered prosecution exhibit 2 with the two challenged entries as "appropriate matter to aid the court in determining the kind and amount of punishment to be imposed." Para. 75*a*, Manual for Courts-Martial, United States, 1969 (Revised edition). In particular, this evidence was offered as "personnel records of the accused . . . made or maintained in accordance with departmental regulations *which reflect the past conduct and performance of the accused.*" Para. 75*d*, Manual, *supra* (emphasis added). I question whether these administrative entries reflect the past conduct and performance of appellant in view of the purpose for such entries stated in applicable service regulations.

Section 6016.2a of the Marine Corps Separation and Retirement Manual (March 23, 1978), stated:

a. Action with a view to discharging a Marine as unsuitable for any of the reasons set forth in subparagraphs 6016.1a through 6016.1e above, will not normally be initiated unless the member has previously been afforded a reasonable opportunity to overcome his/her deficiencies. When it is determined that a member may come within the purview of any of these specific categories, the member shall be notified of his/her deficiencies and he/she shall be counseled concerning them. A brief summary of all counseling given in compliance with this subparagraph shall be recorded on page 11 of the Marine's service record book. If no improvement is forthcoming within a reasonable time, the member shall then be processed for the appropriate type of administrative discharge. Failure of a member to receive or understand the counseling prescrived [sic] herein may be considered by administrative discharge

boards (in the case of a Marine with 8 or more years of active and inactive military service), or by discharge authorities, along with all other factors in the case, in determining whether or not a discharge is appropriate, and if so, the type and character of the discharge to be awarded. However, in no event shall the failure of the Marine to receive or understand such counseling be considered a defense in an administrative discharge proceeding or a bar thereto.

In my opinion these entries were made for the purpose of ensuring that appellant was afforded some administrative due process prior to the command's initiating administrative separation action against him. They also constitute compliance by the command with the appropriate procedure for initiation of such separation action. Accordingly, I have grave doubts whether these administrative entries can be additionally construed as reflecting the past conduct and performance of appellant as intended in paragraph 75d, Manual, *supra*.

The Navy Court of Military Review held these entries were relevant matters for consideration by the military judge in arriving at an appropriate sentence. It did not clearly articulate the relevance except to note that counseling of a Marine by his commanding officer is "[b]y any criterion, a 'pertinent event.' " 10 M.J. 755, 757 (1981). This may be true but, as indicated earlier, I do not believe this is the reason the page-11 entries were made in the present case. Moreover, because the event is pertinent does not mean its recordation cannot be made in a manner adverse to appellant within the meaning of United States Navy Regulations, 1973, Article 1110. Therefore, if these entries in accordance with applicable service regulations can be construed as a record of appellant's poor military performance or a reflection of his inability after counseling to adapt to military service, their adverse nature dictates a conclusion that Article 1110 must be complied with before they are admitted at a court-martial.