UNITED STATES, Appellee,

v.

**Private E–2 Robert L. BING, 099–56–6975, United States Army, Appellant.**

SPCM 22205.

U.S. Army Court of Military Review.

28 Aug. 1987.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Kathleen A.

Vanderboom, JAGC, Captain Stephen W. Bross, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Major Byron J. Braun, JAGC (on brief).

Before DeFORD, KANE and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

DeFORD, Senior Judge:

Appellant was convicted, contrary to his pleas, by a special court-martial consisting of officer members of violation of a lawful general regulation (illegal possession of a switchblade knife), possession of hashish, and possession of cocaine with intent to distribute in violation of Articles 92 and 112a, Uniform Code of Military Justice, 10 U.S.C. secs. 892 and 912a [hereinafter UCMJ]. His sentence included a bad-conduct discharge, confinement for three months, forfeiture of $425.00 pay per month for three months, and reduction to the grade of Private E–1. The convening authority approved the sentence. Upon initial review, this court set aside the convening authority's action and ordered a new review and action because of an error in the post-trial processing of the case.[1] *United States v. Bing*, SPCM 22205 (A.C. M.R. 30 Jan. 1987) (unpub.).

Pursuant to the instruction of The Judge Advocate General of the Army, the Acting Commander, U.S. Army Armor Center and Fort Knox, was designated and accomplished a second review and action approving the sentence imposed by the special court-martial.

Appellant alleges two prejudicial errors were committed during his trial. We disagree and affirm the findings and sentence.

### I

Appellant alleges that his conviction of the Specification of Charge II (violation of a lawful general regulation) is not supported by the evidence of record.

Appellant was convicted of violating para. 14(b)(10) of U.S. Army Europe Regulation 632–10, dated 5 November 1981. That paragraph provides in part:

14. Possession and Use of Destructive Devices and Other Prohibited Items. Except as required in the performance of official duties, personnel will not:

.        .        .        .        .

b. Acquire, possess, ship or use any of the following:

.        .        .        .        .

(10) Any switchblade knife.

The record of trial establishes that unit police on duty at Fliegerhorst Kaserne, Hanau, Federal Republic of Germany, discovered a bag which appeared to be abandoned at the bus stop in front of the unit police shack at an entrance to the kaserne. A unit policeman retrieved the bag and turned it in to his shift sergeant. The shift sergeant opened the bag in an attempt to discover the ownership of the property. He saw some foil packets which he suspected could be illicit drugs and notified the military police who came to the unit police shack. During the process of inventorying the bag, one of the unit policemen noticed appellant driving up to the gate on a moped and stopping adjacent to the bus stop. He was observed looking over the area around the bus stop. Appellant then asked the unit policeman if he had seen a bag.[2] The unit policeman referred appellant to his shift sergeant inside the shack. Subsequent inventory of the bag revealed, in addition to hashish and cocaine, a black with silver trim Super-Automatic brand

---

1. At our initial review, we declined to address appellant's initial allegations of error other than his first assignment of error, to wit: the staff judge advocate failed to serve the post-trial recommendation on the detailed trial defense counsel as required by Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 1106(f) [hereinafter R.C.M.].

2. A subsequent witness testified he had accompanied appellant from a ball field to the bus stop and that appellant had the bag in his possession and had placed the bag on the ground near the bus stop while the two men got out of the rain.

knife with retractable blade. The blade of the knife retracts into the handle when the holder presses the button. When the blade is retracted, the holder may press the button on the handle causing the knife blade to project itself. Witnesses described the knife as both a switchblade as well as a stiletto[3] knife. The issue of whether the knife was a switchblade knife was not raised during the trial and the knife was admitted into evidence without objection.

Appellant argues that the regulation in question here does not define the term "switchblade knife," and the only evidence of record describing the knife was that of Private First Class Johnson, a military policeman who stated that the knife was not a switchblade but a stiletto. He also testified the difference between the two types of knives was that in a switchblade knife the blade comes out from the side and that in a stiletto the blade comes out from the top. Appellant further cites the definition of switchblade knife given in *Webster's*, at 2314, which states: "a pocketknife having the blade spring-operated so that pressure on a catch causes it to fly open." The associated illustration shows the blade flying out from the handle in a semicircle arc. *Id.*

Government counsel argue another witness at the trial described the knife as a "switchblade." Government asserts the significant feature of a switchblade knife is that the blade is operated automatically, that is, "a pocketknife having a spring-operated blade that unsheathes when the release on the handle is pressed." *The American Heritage Dictionary of the English Language* 1301 (1976). They further argue the knife in question was admitted into evidence before the court and each member could decide for himself whether the knife was a switchblade knife. Also they cite the definition given in the Switch-

blade Knife Act, 15 U.S.C. sec. 1542(b), and the U.S. Customs Service definition of a switchblade knife which are in accord with their views.

Where a general regulation forms the basis for a criminal prosecution, the part alleged to have been violated must be measured by the standards set forth for penal statutes. "These rules require that a penal regulation be definite and certain, that it be strictly construed, and that any doubt with respect to it be resolved in favor of the accused." *United States v. Henderson*, 36 C.M.R. 854, 857 (A.F.B.R. 1965). *See also United States v. Sweitzer*, 33 C.M.R. 251 (C.M.A.1963). Words used in a statute must also be construed according to the meaning naturally given them in ordinary usage. *United States v. Blair*, 27 C.M.R. 235, 237 (C.M.A.1959). Further, if the words used in a statute "convey a clear and definite meaning, a court has no right to look for or impose a different meaning. A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself." *Id.* (citing *United States v. Dickenson*, 20 C.M.R. 154 (C.M.A.1955)). The same standards apply when interpreting a regulation. *United States v. Burton*, 42 C.M.R. 970, 972 (A.F. C.M.R.1970).

Applying the foregoing rules to the regulation in question, it is evident that the regulation is clear and unambiguous if the definition of a "switchblade knife" includes the kind of knife of which appellant was convicted of illegally possessing.

We believe the common meaning and general understanding of the term "switchblade knife" is a knife in which the blade extends and is securely locked open upon the pressing of a button or other mechanism. *See Fall v. Esso Standard*

---

**3.** The term "stiletto" generally refers to the type of blade used in a knife or a dagger. *Webster's Third New International Dictionary* (1981) [hereinafter *Webster's*] defines the word stiletto at 2243 as "1 a slender dagger with a blade that is thick in proportion to its breadth—compare PONIARD 2 something that resembles a dagger;

*esp:* a pointed instrument for piercing holes for eyelets or embroidery"; *Random House College Dictionary*, 1290 (Rev. ed. 1982), defines stiletto as "1. a short dagger with a slender blade 2. a small pointed instrument for making eyelet holes in needlework."

*Oil Company,* 297 F.2d 411, 413 (5th Cir. 1961), *cert. denied,* 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55 (1962). Whether the movement of the blade of the knife is caused by mechanical action, gravity or inertia, or whether the blade extends or swings in a semicircle arc from the handle or projects and retracts vertically from the handle of the knife are not controlling factors. Accordingly, the knife in question is a switchblade knife within the clear and unambiguous meaning of the regulation. Thus, the regulation requires no further explanation or definition. Consequently, appellant's conviction of the Specification of Charge II (violation of a lawful general regulation) is supported by evidence of record beyond a reasonable doubt.

## II

■ Appellant further alleges the second convening authority erred when he approved the adjudged sentence as to forfeitures because his action was in conflict with the staff judge advocate's recommendation to approve a lesser amount of forfeitures.

The court-martial imposed punishments which included the forfeiture of $425.00 pay per month for three months. In his post-trial recommendation, the acting staff judge advocate advised the convening authority that appellant's sentence included: "BCD; Conf × 3 mos; FF $425 × 3 mos; RLEG." He advised that his recommendation had been served on the defense counsel and counsel's rebuttal, if any, was attached at enclosure 1 for the convening authority's consideration. Finally, he advised the convening authority to approve the sentence as adjudged and provided an action to accomplish the foregoing recommendation. The defense counsel waived any rebuttal to the post-trial recommendation.[4] The convening authority's action approved, in addition to other punishments,

the forfeiture of $425.00 pay *per month* for three months.

Appellant contends that, although the expression $425 × 3 mos might be read to imply the qualifying words "per month," the legal meaning of such phrase has been determined to be "$425.00 allocated over a three-month period," citing *United States v. Henderson,* 21 M.J. 853 (A.C.M.R.), *petition denied,* 22 M.J. 244 (C.M.A.1986); *United States v. Roman,* 46 C.M.R. 78 (C.M.A.1972); *United States v. Johnson,* 32 C.M.R. 127 (C.M.A.1962); and *United States v. Smith,* 43 C.M.R. 660 (A.C.M.R. 1971). Consequently, the staff judge advocate's recommendation differed from the action taken by the convening authority and, as the convening authority's action is presumed to be based on the recommendation, *United States v. Keathley,* 46 C.M.R. 874 (A.C.M.R.1972), *petition denied,* 46 C.M.R. 1323 (C.M.A.1973), the action was ambiguous and that ambiguity must be resolved in favor of the appellant.

Appellate government counsel correctly point out that the cases cited by appellant are concerned with situations in which the sentencing authority at the court-martial returned announced sentences which included sentences to forfeitures but which omitted the words "pay per month." Consequently, the sum announced is the total amount to be forfeited. There are also other differences. However, suffice it to say that that situation is not included in the factual pattern here.

R.C.M. 1106(d)(2), in prescribing the form of the recommendation of the staff judge advocate, provides: "The recommendation of the staff judge advocate or legal officer shall be a concise recommendation." Furthermore, he is required, among other matters, to advise the convening authority of the findings and sentence adjudged by the court-martial. R.C.M. 1106(d)(3)(A). Obviously, the requirement to report the ad-

---

4. The allied papers disclose that the defense counsel waived his optional response under R.C.M. 1106 as noted. However, he filed a response under R.C.M. 1105 which alleged nu- merous errors which he believed were committed at trial. The convening authority took no action concerning those allegations of error.

judged findings and sentence requires *a correct statement* of the findings and sentence.

We do not believe that the advice with regard to forfeitures was ambiguous. This court has previously held in a similar factual situation that the staff judge advocate's advice to a convening authority in which the forfeitures were listed as "$_____ \times 3$ mos." was by definition and common usage a multiplication symbol which meant "times 3." *United States v. Kahuhu*, ACMR 8700165 (A.C.M.R. 20 July 1987) (unpub.).[5] Furthermore, the convening authority also received a proposed action prepared by the acting staff judge advocate that correctly provided for the approval of the forfeitures adjudged by the court-martial of $425.00 pay per month for three months. Any possibility of ambiguity surrounding the recommendation was clarified by the proposed action. Read together or separately, the two documents provided for the forfeiture of $425.00 *pay per month* for three months.

Additionally, we note that, as required by R.C.M. 1106(f)(1), the recommendation of the acting staff judge advocate was duly served upon the defense counsel. Counsel, as we have noted, failed to address any perceived ambiguity. "Failure of recommendation or matters attached to the recommendation in a timely manner shall waive later claim of error with regard to such matter in the absence of plain error." R.C.M. 1106(f)(6).

In conclusion, we find the post-trial recommendation of the acting staff judge advocate was not ambiguous nor was the convening authority misinformed as to the correct adjudged sentence as to forfeitures by the recommendation of the acting staff judge advocate.

The findings of guilty and the sentence are affirmed.

Judge KANE and Judge KENNETT concur.

5. The cited opinion is attached as an appendix

## APPENDIX

UNITED STATES, Appellee,

v.

Private (E–1) LEONARD M. KAHUHU Jr., 576–98–8901, United States Army, Appellant.

### ACMR 8700165

UNITED STATES ARMY COURT OF MILITARY REVIEW

20 July 1987

9th Infantry Division (Motorized)

M.B. Kearns, Military Judge

For Appellant: Lieutenant Colonel Joel D. Miller, JAGC, Major Marion E. Winter, JAGC, Captain Stephanie C. Spahn, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Larry D. Williams, JAGC (on brief).

Before FELDER, GILLEY, and ROBBLEE, Appellate Military Judges.

### MEMORANDUM OPINION

FELDER, Senior Judge:

The military judge sentenced appellant to a bad-conduct discharge, confinement for three months and forfeiture of $438.00 pay per month for three months for being absent without authority, wrongful appropriation and breaking restriction. The staff judge advocate in the post-trial recommendation advised the convening authority to approve the adjudged sentence that included forfeiture of "$438 \times 3$ mos". Appellant contends the convening authority, consistent with the advice of the staff judge advocate, approved forfeiture of a total of $438.00 over a three month period. We believe otherwise.

The "$\times$" in the above formula by definition and common usage is a multiplication symbol and clearly indicates forfeiture of $438.00 times 3, for a total of $1314.00. Military justice is not blind to the plain meaning of words and figures and we shall

to this opinion of the court.

not abandon the obvious for the obscure. To rule as appellant would have us to do would permit an element of intolerable unfairness to be injected into the proceedings.

The parties to the trial and the military judge agreed appellant should receive three days of pretrial confinement credit for restriction tantamount to confinement. *United States v. Mason*, 19 M.J. 274 (C.M.A.1985) (summary disposition). The appellant claims the military judge erred by not determining whether he was entitled to additional administrative credit under R.C.M. 305(k), although appellant did not request the military judge to grant such credit. *See United States v. Gregory*, 21 M.J. 952 (A.C.M.R.1986), *aff'd*, 23 M.J. 246 (C.M.A. 1986) (summary disposition). Since there was no showing in the record of either compliance or violation of R.C.M. 305, we shall not grant appellant additional days of administrative credit against his sentence to confinement. *See United States v. Ecoffey*, 23 M.J. 629 (A.C.M.R.1986).

Accordingly, the findings of guilty and the sentence are affirmed.

Judge GILLEY concurs.

Judge ROBBLEE took no part in the decision of this case.

FOR THE COURT:
/s/ WILLIAM S. FULTON, JR.
Clerk of Court