**UNITED STATES**

v.

**Daniel J. FRANCIS, Chief Boatswain's Mate, U.S. Coast Guard.**

**CGCM 9990.**
**Docket No. 884.**

U.S. Coast Guard Court of
Military Review.

Oct. 22, 1987.

Military Judge: CDR Paul M. Blayney, USCG.

Trial Counsel: LCDR Gary M. Heil, USCG.

Detailed Defense Counsel: LCDR Arthur Butler, USCG.

Civilian Defense Counsel: Mr. William F. McLaughlin.

Appellate Government Counsel: LCDR Thomas J. Donlon, USCG.

Appellate Defense Counsel: LCDR Robert Bruce, USCG.

## DECISION

BAUM, Chief Judge:

At a general court-martial composed of commissioned officer members, appellant, contrary to his pleas, was convicted of seventeen specifications in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Thirteen of the offenses involved either possession, distribution or use of marijuana. Subdivided, those offenses separate into one specification of possession, four specifications of distribution and eight specifications of use, all in the presence of, or involving young people, some of whom were members of the base teen club, for which the accused acted as an advisor. Three of the convictions were for obstruction of justice by the accused trying to influence the testimony of potential witnesses against him at the preliminary investigation. The remaining offense was for wrongfully providing an alcoholic beverage to a 16 year old girl, a military dependent, and for having sexual intercourse with her in the presence of another 16 year old girl. The Court members sentenced the accused to a dishonorable discharge, total forfeitures, reduction to pay grade E–1 and confinement for 3 years. The convening authority reduced the confinement to 2½ years but otherwise approved the sentence.

1. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

Appellant has assigned eleven errors before this Court. In one of the assignments, appellant asserts that he was denied a fair pre-trial investigation by the investigating officer's failure to conform to Article 32, Uniform Code of Military Justice standards of neutrality, detachment and independence. Citing, *United States v. Payne,* 3 M.J. 354 (C.M.A.1977) and *United States v. Brunson,* 15 M.J. 898 (C.G.C.M.R.1982) aff'd. 17 M.J. 181 (C.M.A.1983), appellant contends that violation of these standards raises a presumption of prejudice which the government can only overcome with clear and convincing evidence, which he says cannot be adequately satisfied by affidavits. For that reason, he contends that a *DuBay* [1] type evidentiary hearing should be ordered to develop the content and effects of an *ex-parte* meeting involving the investigating officer or that corrective action be taken through the ordering of another Article 32, Uniform Code of Military Justice investigation with a new investigating officer. In the alternative, he says the findings and sentence should be set aside and the specifications and charges dismissed.

Appellant does not contend that the investigation itself was conducted in such a manner that standards of neutrality, detachment and independence were violated. His contention, instead, is that error occurred before the investigation commenced, when the investigating officer met with the accused's commanding officer, the trial counsel and the accuser outside the presence and knowledge of the accused. The issue was not litigated at trial because, according to the brief, appellant learned of the meeting only after appellate defense counsel was assigned. Government counsel counters with the assertion that the doctrine of waiver applies to an error of this nature even though the accused may not have had knowledge of the circumstances at trial. In any event, he says the trial defense counsel at the time had been informed of the intended meeting, pointing to an affidavit from the investigating officer to support this contention.

■ We reject both of these positions with respect to waiver. First, we do not believe counsel and accused can waive an error of which they are unaware, through no fault of their own. It was their very exclusion from the meeting and lack of

knowledge of it that forms the basis for the assignment, as distinguished from the facts in *United States v. Tatum*, 17 M.J. 757 (C.G.C.M.R.1984), where waiver was applied after the defense failed to object at trial to *ex-parte* discussions between the Article 32 investigating officer and government representatives, of which the defense was fully aware. Secondly, in an affidavit from the defense counsel who was purportedly informed, he states that he cannot remember whether or not he was aware that the Article 32 Investigating Officer met prior to the investigation with the commanding officer for anything other than a courtesy call, to which counsel would not have objected. He does state with certainty, however, that he was not aware of any meeting between the investigating officer, trial counsel, accuser and commanding officer that involved discussion of the adequacy of the specifications. Furthermore, as of a date prior to the challenged meeting, counsel says his representation of the accused was considered terminated, with replacement to come from another military counsel and civilian counsel. Moreover, there is no indication that any information concerning such a meeting was passed on to counsel who ultimately represented appellant at trial. Accordingly, the doctrine of waiver will not be applied to this issue.

■ Despite our rejection of the Government's waiver contentions and our consideration of the assignment on its merits, we find no prejudicial error with respect to the asserted meeting. *See United States v. Reynolds*, 24 M.J. 261 (C.M.A.1987) where the Court, while stating that "the appointed Article 32 officer must be impartial and, as a quasi-judicial officer, is held to similar standards set for a military judge," went on to say that "[t]here is no absolute bar to all contact between an Article 32 officer and all members of a staff judge advocate's office." *Id*. at 263. Here, we believe that the pretrial investigating officer's report and the affidavits submitted by appellate counsel adequately establish that the Article 32 officer did not violate the requisite standards. Accordingly, no violation of standards having been shown, the presumption of prejudice proclaimed in

*United States v. Payne, supra,* has not been generated.

The investigating officer in the instant case has stated in her affidavit that the purpose of the meeting with the Commanding Officer, trial counsel and accuser was to correct errors in the charges and specifications in fulfillment of her duty to ensure that they alleged offenses under the proper Uniform Code of Military Justice article and to report any defects in the charges and specifications to the officer who convened the investigation. She states that she was well aware of the rules prohibiting an investigating officer from receiving advice on anything but trivial matters from anyone in a prosecutorial capacity or getting advice on a substantive matter from anyone without the defense counsel present, or at least aware of the advice. She says she did not violate these rules at anytime, that the trial counsel accompanied her in order to introduce her to the convening authority, whom she had not yet met, and that she received no advice from the trial counsel at the meeting. In any event, the meeting resulted in deletion of specifications from the charge sheet, not the addition of any offenses. Appellant did not assert at trial nor, as indicated previously, does he contend before this Court that the investigating officer was other than neutral, detached and independent in conducting the investigation. Moreover, we do not detect any unfair treatment or denial of rights at the investigative stage of this case. In short, we do not see how the investigating officer's *ex-parte* meeting with the commanding officer, trial counsel and accuser infected the investigation or subsequent trial to the accused's detriment. Accordingly, we find no merit in this asserted error.

In another assignment, appellant challenges testimony at trial from the accused's commanding officer, the Coast Guard Captain who convened the Article 32 investigation. The Government called this officer to testify concerning the impact and effect on the Coast Guard of acts of the nature alleged to have been committed by the accused. The witness, who was both

Commanding Officer of Enlisted Personnel and Chief of the Personnel Division, Twelfth Coast Guard District, had no personal knowledge of any of the offenses. Despite this fact and the denial of a motion to qualify him as an expert, the witness was allowed, over defense objection, to express opinions on this subject in response to hypothetical questions. The following verbatim excerpt of testimony provides examples of the kind of opinions that were expressed:

Q. Captain, if a chief petty officer in the United States Coast Guard, acted in a collateral manner, not as part of his official duties, as the advisor to a teen club, an on-base teen club, and after a function of the teen club, went out with a 16–year old member of the teen club, a military dependant [sic], and another woman, to a place several miles off of the reservation, and if this chief petty officer, shared marijuana with the 16–year old military dependant [sic], and had intercourse with her, in the presence of the other young girl, would that have an affect [sic] on the Coast Guard?

CDC: Objection, Your Honor. I don't believe this witness is in a position to be able to answer that, Your Honor. You know, I fail to see the relevancy.

MJ: Again, I overrule the objection. Captain, you may answer, if you can, sir.

A. Yes, I believe it would. And like in a number of possible ways. I think it's important to keep in mind that when we promote somebody to a position of chief petty officer, the Coast Guard places, and publicly places, a special trust and confidence in that individual's, not only his ability but also his fidelity, that is stated right in his promotion certificate, and I feel that if something like that happened, that chief petty officer would have violated the trust that the Coast Guard placed in him. I think if he were to violate a sense of honor, a personal code of honor, the Coast Guard expects of all of its members, especially its members in a senior or leadership position. As to the specific affect [sic] on the Coast Guard, I can think of some impacts. One would be that if a person did

violate the trust that's been placed in him, and did violate that personal code of honor, I find it hard for him to effectively perform his duties in the chain of command in the Coast Guard. I feel that he loses a sense of respect, by both superiors and subordinates, and it would be hard for him to effectively function in the Coast Guard. I'm [sic] also feel that the impact this would have on the young children involved, would have a direct impact on the Coast Guard. I think it's important—you did say these were Coast Guard dependants [sic] or military dependants [sic]?

Q. Military dependants [sic]?

A. The military sends people to isolated duty and to long deployments on ships. And I think that creates a lot of stress on the member subjected to that. And it creates a lot of loneliness and anxieties on his part, and I think the one thing that sustains people in a position like that, is to be secure in the knowledge that your family and loved ones back home are safe and secure, happy, and well-cared for. I think that is—that is the one thing that helps make individuals endure the hardships of going to sea and isolated duty and I feel that something like this is bound to have a—an adverse affect [sic] on a young person. And were that word to get back to the military member who is deployed, I think would severely impact his performance. I've seen it a number of times on ships I have been on where there has been a serious family disturbance back home, and I've seen it in otherwise outstanding member performance drop off drastically, and the affect [sic] that has on the operational capabilities of the unit is significant.

. . . .

Q. Let me ask you then, Captain, given the scenario I just gave you. Would it have an affect [sic] on the service if a service member went out, used marijuana, gave marijuana to a 16–year old within three miles of the Coast Guard reservation?

A. I think it would have an affect [sic] on the service considering the impact it

would have on the military community at [or] on base. I think if there is an established teen club and a chief petty officer is the supposed leader of that club, if he takes liberties and violates certain trusts that are placed in him in that position, I think it would have an affect [sic] on the society, certainly the teenage society on-board that military base.

Q. Would that be a positive affect [sic] or a negative affect [sic]?

A. Negative.

Pages 411, 412, 414 and 415 Record of Trial.

■ Appellant asserts that it was error for the judge to admit the testimony of this witness because it constituted lay opinion, not rationally based on his perception and not helpful. Counsel also argues that this testimony infected the proceedings with command influence in view of the witness's rank and position on the staff of the convening authority. Again, the Government asserts waiver. This time, counsel says it resulted from defense's failure to properly raise the objection at trial. As indicated in the quoted colloquy, the defense did object to the testimony, but based its objection on relevancy. When objecting, the defense did not cite the specific grounds now raised before this Court.[2] As pointed out by the Government, MRE 103(a)(1) requires that every objection state the specific grounds on which it is based and, citing *United States v. Lambert,* 17 M.J. 600, 604 (N.M. C.M.R.1983), *United States v. Shelwood,* 15 M.J. 222, 224 n. 1 (C.M.A.1983), *United States v. White,* 19 M.J. 662 (C.G.C.M.R.

1984) and *United States v. Mennuti,* 679 F.2d 1032 (2d Cir.1982), counsel contends that grounds not asserted at trial may not be relied upon at the appellate level.

Such a strict application of the waiver doctrine in MRE 103(a)(1) may not be appropriate for cases before our Court in light of the broad and independent review responsibilities at this level mandated by Congress. Once a case has been referred to a court of military review, Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, requires that the court "affirm only such findings of guilty and the sentence or such part or amount of the sentence, *as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.*" (Emphasis added). The statutory requirement that this Court independently determine that a conviction and sentence are both legally and factually correct, before affirming, may raise a serious question concerning the rigid application of Manual provisions establishing a waiver of error doctrine. If this Court were to overlook errors of law simply because the defense counsel failed to cite the proper ground when objecting at trial, it might be said that we had failed to meet our uniquely broad and independent review responsibilities as outlined in the Code.[3] In any event, MRE 103(d) does provide that, "[n]othing in this rule precludes taking notice of plain errors that materially prejudice substantial rights although they were not brought to the attention of the military judge." Liberal application of the "plain error" concept would certainly reduce any

---

2. Arguably, counsel's above-quoted relevancy objection included one of the grounds asserted here for excluding the witness's answer. Counsel said, "I don't believe this witness is in a position to be able to answer that, Your Honor", which could be interpreted to mean that the witness had no personal knowledge and, therefore, his answers would not be rationally based on his perception. It is also noted that certain questions put to this witness that have not been included in the quoted colloquy were objected to by the defense as calling for opinion without a foundation having been laid. All of these objections were sustained by the judge. Presumably, a proper foundation would show that the witness's testimony was based on the perception of the witness. Accordingly, it could be argued that a proper ground was given for these

objections and, in these instances, the objections were sustained.

3. It must be noted, however, that rejection of a strict waiver rule may have the practical effect of shifting a burden back to the trial judge which the waiver rule undoubtedly was intended to place squarely on the defense counsel. At present, trial judges may feel justified in basing their rulings solely on what defense counsel cite as grounds when objecting. As indicated in the previous footnote, when a proper ground was offered for objecting to the opinion testimony in this case, the judge sustained the defense objection. When an incorrect ground was given, the objection was overruled.

possible conflict between Article 66, Uniform Code of Military Justice and the waiver rule that has been created by Executive Order. Accordingly, we will carefully consider appellant's assertions with respect to the lay opinion testimony of the accused's commanding officer to determine whether there was plain error.

■ Appellant bases his first argument with respect to this testimony on the wording of Rule 701, Military Rules of Evidence (MRE), MCM, 1984 which states:

> If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inference is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness of the determination of a fact in issue.

Counsel argues that the witness's opinion testimony should have been rejected because it failed to meet either of these tests. We agree with appellant. As pointed out in appellant's brief, the witness did not have first hand knowledge of any of the alleged offenses nor did his testimony relate to anything he personally observed. It consisted, instead, of opinions based on hypothetical questions posed by trial counsel. Granted, this witness's conclusions as to whether the accused's conduct was prejudicial to good order and discipline, or service discrediting, were based on the witness's experience over the years in various Coast Guard assignments, but such personal experience does not, in our view, satisfy the MRE 701 requirement that opinions or inferences be rationally based on the perception of the witness. If the witness could have testified to various effects personally known by him to have resulted from the alleged offenses, from which he could then draw an inference or opinion concerning prejudice to good order and discipline, it might be another matter, as, for example, lay opinion identifying a drug,

when supported by observed facts. *United States v. Tyler,* 17 M.J. 381 (C.M.A.1984). Testimony of this nature would be more akin to such clearly permitted opinions as speed of a car or sobriety of an individual when based on first hand observation. While MRE 701 has broadened the scope of lay opinions permitted beyond these noted examples that were allowed under old Manual for Courts–Martial provisions, the new rule is not so broad, in our view, that it allows the kind of opinions with which we are confronted in this case.

Since the lay opinions presented here were not based on first hand knowledge of the witness and constituted nothing more than the kind of observations all the court members could make from their own experiences, the testimony was not helpful and thus did not meet either of Rule 701's tests. Appellate defense counsel's words on this matter succinctly express our outlook:

> CAPT Leane's testimony really did nothing more than tell the court members what result he thought they should reach.[4] At best, CAPT Leane could only rely on his personal experience to weigh the facts, which were put to him in the form of hypothetical questions, and form an opinion about the effect such conduct would have on the Coast Guard. That, however, is what the court members, who had heard all the evidence first hand, were required to do.[4]

[4] The instruction on the credibility of evidence in the Military Judge's Benchbook, DA PAM 27–9, May 1982, states that "in weighing and evaluating the evidence you are expected to use your own common sense, your knowledge of human nature and the ways of the world." At 2–27.

Brief on behalf of Appellant at page 18.

■ As noted, appellant also contends that this testimony infected the proceedings with command influence. He bases this argument on the assertions that all of the court members were junior to the witness and all worked on the convening authority's district or area staffs. According-

[4.] In this regard, it should be noted that Rule 704, MRE, expressly allows opinion testimony on an ultimate issue as follows: "Testimony in the form of an opinion or inference otherwise

admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

ly, appellant argues that since the witness, as Chief of the District Personnel Division and Commanding Officer of Enlisted Personnel, was the convening authority's surrogate for personnel matters, including discipline of enlisted personnel, the court members would consider the witness's opinions to reflect the views and policy of the convening authority. While we have no difficulty agreeing with appellant concerning the failure of this testimony to meet the MRE 701 tests, we are unable to find any command influence flowing from the witness's testimony. The kind of offenses with which the accused was charged are so clearly prejudicial to good order and discipline and service discrediting that no amount of opinion on this subject from the convening authority or his "surrogate" would have had any influence on the ultimate outcome. Furthermore, the fact that neither the judge nor the defense raised for consideration at trial the possibility of command influence supports this conclusion. If there had been the slightest perception of the kind of influence from this witness that has been asserted on appeal, it is reasonable to assume the issue would have surfaced. The correctness of this assumption is underscored by other actions of the military judge and the defense which demonstrate a sensitivity to possible improper influence. On his own motion, the judge alertly called for a session of court out of the hearing of the witness and court members pursuant to Article 39(a), Uniform Code of Military Justice, when the witness revealed information that placed him in a direct superior/subordinate line over one of the court members. At that session, the defense decided to request further *voir dire* examination of the court member when offered that opportunity by the judge. That examination made it clear there would be no undue influence on this member from the witness's testimony and, indeed, no challenge of that member was forthcoming, nor was the issue of command influence pursued by the defense.[5] The assignment of error in this regard is without merit.

Our conclusion that this testimony had no effect and added absolutely nothing to this case is dispositive of the question of whether admitting the testimony constitutes "plain error" that materially prejudiced substantial rights of the accused. It was, in our view, totally unnecessary and of no effect on the ultimate conclusions by the court. These offenses of marijuana use, possession and distribution involving teenagers, along with a sex offense with a sixteen year old military dependent and the obstruction of justice offenses, are on their face service discrediting and prejudicial to good order and discipline, particularly in light of the accused's senior enlisted rate as a Chief Petty Officer. Accordingly, we find the error to be harmless beyond a reasonable doubt.

Appellant asserts in one of the remaining assignments of error that he has been prejudiced by inordinate and inadequately explained delay from the date of sentencing until receipt of the record by the Chief Counsel. We disagree. After subtracting all delay that is reasonably chargeable to the defense, we do not believe the resultant period is inordinate. In any event, there is adequate explanation for the delay in this case. Moreover, we discern no prejudice warranting corrective action. Accordingly, appellant's assignment to this effect is rejected.

In another assignment of error, appellant asserts that the court's guilty findings for specifications 10 (number 7 as presented to the members) and 14 (number eleven as presented to the members) were multiplicious and, therefore, the offenses should either be consolidated or one of them dismissed. Government counsel concedes the multiplicity and concurs in the consolidation of the offenses, but submits that no action with respect to the sentence is warranted on this basis. We agree with the consolidation and will reasses the sentence. A supplementary court-martial order should be issued in which specifications 10 and 14 are consolidated into one specification.

---

**5.** See Appendix A, which is a verbatim colloquy    from the record of trial.

■ All the remaining assignments of error are rejected as without merit, save the last assignment, which asserts prejudice from the staff judge advocate's misstatement to the convening authority that the accused had been convicted of possession and use of cocaine and that he was convicted of 18 specifications rather than 17. Obviously, the requirement under RCM 1106(d)(3)(A), to inform the convening authority of the adjudged findings and sentence, requires a correct statement of the findings. *United States v. Bing*, 24 M.J. 929 (A.C.M.R.1987). In addition, we note that the military judge instructed the court members to consider certain specifications multiplicious for sentencing purposes, (including specifications 10 and 14) resulting in reducing the offenses, for punishment purposes, to 11, however, this was not brought to the convening authority's attention. In order to assure that the approved sentence is purged of all possible taint from the incorrect statements concerning conviction of possession and use of cocaine and the possibility that the convening authority acted on the sentence in the belief that there were 18 separate offenses for punishment purposes, we will also reassess the sentence in light of these factors. In taking this action we have chosen to treat the misstatements and omissions by the district legal officer as plain error and will not deem the error as waived by the defense's failure to comment on the matter after being served with a copy of the legal officer's recommendation.

We find the evidence against this accused compelling and his own testimony unconvincing. While the testimony of the witnesses with respect to the obstruction of justice offenses did not relate that appellant explicitly requested them to lie for him, their testimony as to appellant's words and actions convinces this Court that appellant intimidated these witnesses in an effort to obtain false testimony from them as alleged. Our review of this record convinces us of appellant's guilt of all offenses beyond a reasonable doubt. Having

reached this point, we must now reassess the sentence for the reasons stated above. Upon reassessment and after consideration of all the circumstances of this case, including the matters presented in extenuation and mitigation as well as those submitted in a post trial clemency request, we believe a bad conduct discharge to be more appropriate than a dishonorable discharge. Otherwise, the approved sentence is appropriate for these offenses and this accused. Accordingly, the findings of guilty and only so much of the sentence approved below as provides for a bad conduct discharge, confinement for 2 years and 6 months, forfeiture of all pay and allowances and reduction to E–1 are affirmed.

Judges BRIDGMAN and JOSEPHSON concur.*

BURGESS, Judge (concurring in part, dissenting in part).

I concur with the majority opinion except for that portion which theorizes as to a possible conflict between Article 66, Uniform Code of Military Justice and the Manual for Courts–Martial "waiver of error" rule. As a result, I see no need for liberal application of the "plain error" concept and, accordingly, would not apply that doctrine to the facts of this case. In particular, the errors noted by the majority with respect to the district legal officer's recommendation to the convening authority, in my view, have been waived by the defense counsel's failure to comment on them. I, therefore, see no need to reassess the sentence in light of these errors. Otherwise, I agree with the majority action with respect to findings and sentence.

### APPENDIX A

The following exchange is taken from pages 408–410 of the record of trial:

MJ: Bailiff, would you ask Mr. Milobar to step in. [The bailiff did as directed. Mr. Milobar was seated.] Please be seated, Mr. Milobar. We are back in that

* Neither Judge Grace, who was present for oral argument but completed his tour of duty as a Judge on this Court on September 8, 1987, nor Judge Barry, who replaced Judge Grace on the Court, participated in the decision in this case.

session where we started out called, voir dire. The reason we are back in that session is that it appears to the court that the witness that has been called may be in your direct chain of command as a—the ultimate supervisor of the office that you work in[,] in the duties that you've described as Housing Officer. Is that correct?

MEMBER (CWO MILOBAR): Yes, sir. Some decisions are made by him.

MJ: Could you describe the—your position vis a vie [sic] his and the inter-relationship.

MEMBER (CWO MILOBAR): Most of the jobs, I take care of are the day to day assignments to housing, approving leases handling any damage claims, any problems with the housing, whether they're having a couple of neighbors or excessive utilities, the day to day problems.

MJ: How much contact do you have with the Captain?

MEMBER (CWO MILOBAR): I see him everyday but I don't go into [sic] see the Captain everyday on following—just so routine doesn't require the Captain to get involved in.

MJ: What role does he play in your performance evaluation?

MEMBER (CWO MILOBAR): He is the supervisor on the report.

MJ: Can you view his testimony the same as any other witness or would you give his testimony any more [or] less weight than any other witness?

MEMBER (CWO MILOBAR): It would be the same as any other witness, not add any weight to his testimony.

MJ: Would the position of Captain Leane as your supervisor, in any way, give you cause for concern with regard to performance evaluations as a result of any determination this court and you as members of this court may come up with?

MEMBER (CWO MILOBAR): No, sir, I would have no worries. This is entirely independent.

MJ: Do you feel that there is any infringement on that independence, or would you feel any infringement on that independence, based on the fact that Captain Leane is your supervisor and testifying now for the government?

MEMBER (CWO MILOBAR): No, sir. I'm completely detached from whoever is up there on the witness stand, whether I know them or not.

MJ: Being called upon to accept or reject the testimony of any particular witness, could you reject Captain Leane's testimony as readily as you could any other witness under the similar circumstances?

MEMBER (CWO MILOBAR): Yes, sir. I believe I could assume.

ASSISTANT REPORTER: Could you please have him speak up?

MJ: Do counsel have additional questions for Mr. Milobar?

CDC: None from the defense, Your Honor. Thank you.

TC: None from trial counsel, Your Honor.

MJ: Mr. Milobar, you may join the other members. Thank you.

CWO Milobar withdrew from the courtroom.

MJ: Member Milobar has withdrawn from the courtroom. Do either counsel care to impose a challenge?

TC: Trial counsel does not, Your Honor.

ADC: Defense counsel does not, Your Honor. May it please the court before we abandon the—recess the 39(a) session, it is the defense intention that I be questioning Captain Leane for court information.

MJ: Thank you. Article 39(a) session is ended. We will resume. You may call the members and the witness.

Pages 408, 409 and 410 Record of Trial.