**UNITED STATES**

v.

**Steven D. MILLER, Yeoman Second Class, U.S. Coast Guard.**

**CGCMS 23953.
Docket No. 937.**

U.S. Coast Guard Court of Military Review.

5 April 1990.

Trial Counsel: LT Genelle G. Tanos, USCGR.

Detailed Defense Counsel: LT Kevin J. Collins, USCGR.

Appellate Government Counsel: LCDR Michael J. Devine, USCG.

Appellate Defense Counsel: CDR Terrance M. Edwards, USCG.

Before Panel One, BAUM, BRIDGMAN, JOSEPHSON and SHKOR, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by Special Court-Martial judge alone. He was charged with one specification of unauthorized absence for 29 days in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 and one specification of desertion in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885. Appellant pled not guilty to desertion, but guilty to the lesser included offense of unauthorized absence for over two years and guilty to the separate unauthorized absence of 29 days. Notwithstanding his plea, appellant was convicted of desertion. He also was found guilty of the 29 day absence in ac-

cordance with his plea to that offense. Thereafter, he was sentenced to a Bad Conduct Discharge, confinement for four months, forfeiture of $460.00 pay per month for four months, and reduction to pay grade E–1. That sentence has been approved by the convening authority. Before this Court, appellant has submitted two assignments of error:

I

THAT THE ADMISSION INTO EVIDENCE OF STATEMENTS MADE BY THE ACCUSED TO AN ARRESTING CIVILIAN POLICE OFFICER CONSTITUTED PREJUDICIAL ERROR

II

THAT IMPOSITION OF A BAD CONDUCT DISCHARGE UPON A COAST GUARD ENLISTED MEMBER CONVICTED OF DESERTION OR UNAUTHORIZED ABSENCE, IN TIME OF NEITHER WAR NOR NATIONAL EMERGENCY, CONSTITUTES "CRUEL OR UNUSUAL PUNISHMENT"

These assignments having been briefed and orally argued, the case is now ready for decision.

I

Appellant argues that, despite holdings to the contrary in *U.S. v. Temperly*, 22 USCMA 383, 47 CMR 235 (1973) and *U.S. v. Holder*, 10 USCMA 448, 28 CMR 14 (1959), there have been changes since those decisions which warrant extending Article 31, 10 U.S.C. § 831 warning requirements to civilian police who question suspected deserters. Those changes include a recent U.S. Court of Military Appeals decision, *U.S. v. Quillen*, 27 MJ 312 (CMA 1988), expanding the ambit of Article 31 to include a civilian detective employed by the Army and Air Force Exchange Service, and technological advancements which now make it easy to alert civilian law enforcement officials of Article 31, UCMJ warning requirements when apprehending deserters. We need not answer the questions whether the time is ripe for such an extension of Article 31 requirements, or whether

a Court of Military Review is the proper body to take such action, because this simply is not the appropriate case for such a bold step.

■ At trial, the defense did not raise this issue, either by objection to the civilian police officer's testimony or by a motion to suppress the evidence. As a result, the Government argues that any error in admitting the testimony has been waived. We certainly agree with that position as it relates to the police officer's failure to give Article 31, UCMJ warnings. *U.S. v. Temperly, supra,* and *U.S. v. Holder, supra,* held long ago that Article 31 warnings are not required in such circumstances. For that reason, we are unable to say that it was plain error to allow testimony concerning unwarned answers by the accused. Even upon application of a liberal approach to the plain error doctrine, as suggested in *U.S. v. Francis,* 25 MJ 614, 618, 619, (CGCMR 1987) in order to reconcile the waiver rule with this Court's Article 66, UCMJ, 10 U.S.C. § 866 responsibilities, the long standing case law from *Temperly, supra,* and *Holder, supra,* precludes a finding of plain error on this issue. Accordingly, the assertion here that Article 31, UCMJ was violated by the civilian police officer's questioning the accused is deemed to have been waived.

■ As part of his first assignment, appellant also contends that the police officer's questioning of the accused constituted custodial interrogation requiring warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and *U.S. v. Tempia,* 16 USCMA 62, 37 CMR 249 (1967), which were not given. In this regard, we find that the accused was not in custody until the police officer placed handcuffs on him. Failure to warn the accused before that point did not contravene *Miranda v. Arizona, supra,* and *U.S. v. Tempia, supra.* Accord, *U.S. v. Temperly, supra.* Accordingly, it was not error to admit testimony relating to the accused's answers prior to his being placed in custody. We find that the testimony relating to the few answers given by the accused to

questions after that point constituted plain error. We have determined, however, that this error was harmless beyond a reasonable doubt. Accordingly, appellant's first assignment of error is rejected in all respects.

## II

■ In his second assignment of error, appellant argues that, when there is neither war nor national emergency, it amounts to "cruel or unusual punishment" under both the Eighth Amendment to the U.S. Constitution and Article 55 UCMJ, 10 U.S.C. § 855 to impose a bad conduct discharge upon a member of the Coast Guard for either desertion under Article 85, UCMJ or unauthorized absence in violation of Article 86, UCMJ. Appellant bases this argument on the differences between the Coast Guard, as an element of the Department of Transportation, and the other military services within the Department of Defense which have primary missions relating to national security. In view of the Coast Guard's varied missions unrelated to national defense, appellant argues that his offenses should be viewed in a non-military context, amounting to nothing more than walking away from a "mere 'desk job'". Brief for Defense at 26. For these reasons, he says the adjudged bad conduct discharge amounts to "cruel and unusual punishment."

Appellant's contention strikes us as a novel twist to the old argument that absence offenses should be decriminalized during periods when the nation is not at war. While not asserting that particular thesis, appellant comes very close to it when saying his acts amounted to nothing more than walking away from a mere desk job. Of course, appellant's characterization of his acts does not accord with the view of Congress. That body determined long ago to designate absences without authority and desertion as criminal offenses under the Uniform Code of Military Justice, whether or not committed during war. Despite the many amendments to that Code over the past forty years, Congress has never chosen to decriminalize these offenses for periods when the country is not at war, nor has Congress limited the authorized punishment in any way, other than to specify that death is not authorized for desertion except in time of war.

The president signed into law the original Uniform Code of Military Justice and all subsequent amendments without voicing disagreement with these provisions. Furthermore, the president, pursuant to his authority under Article 56, UCMJ, 10 U.S.C. § 856, has included punitive discharges within the maximum punishment limits for desertion and the longer unauthorized absences, without distinction as to whether they were committed during wartime or not. Manual for Courts–Martial, 1984, Part IV.

■ Rather than arguing that no crime was committed, appellant says, instead, that the nature of his acts, as a yeoman with a desk job in the peacetime Coast Guard, are such that to impose a bad conduct discharge for them amounts to cruel and unusual punishment under the Eighth Amendment and Article 55, UCMJ. He does not assert that a bad conduct discharge is cruel and unusual punishment per se, nor does he contend that it is cruel and unusual for all instances of desertion and unauthorized absence during peacetime—only for Coast Guardsmen. Presumably, he would find the punishment permissible under both the Constitution and Article 55 for members of the Army, Navy, Air Force, and Marine Corps, even in peacetime, because of their national security duties. We see no basis for such a distinction when it comes to punishment authorized by the Uniform Code of Military Justice and the Manual for Courts–Martial, nor do we see any justification for viewing a bad conduct discharge as cruel and unusual punishment under either the Eighth Amendment or Article 55, UCMJ, whatever the offense or whoever the offender.

The Uniform Code of Military Justice treats the Coast Guard no differently from the other services when it comes to the applicability of the various provisions of that Code. The same can be said for the Manual for Courts–Martial. We see no

reason to exempt a Coast Guard yeoman, such as the accused, from the effects of these provisions.[1] Accordingly, his second assignment of error is deemed to be without merit.

We find the punishment imposed in this case to be neither cruel, unusual, nor inappropriate for the offenses committed by this accused. We are also convinced that the findings of guilty are correct in law and fact. Accordingly, the findings and sentence approved below are affirmed.

Judges BRIDGMAN and SHKOR, concur.

Judge JOSEPHSON did not participate in this case.

1. Interestingly, a case cited by appellant during oral argument relating to a death claim on behalf of a Coast Guard Lieutenant Commander, "killed while performing a rescue mission on the high seas, a primary duty of the Coast Guard," provides a clear cut statement from the Supreme Court on the irrelevance of the distinctions drawn by appellant. *U.S. v. Johnson*, 481 U.S. 681, 691, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (1987). In that case, decided only one month before the Supreme Court's landmark military justice decision involving the court-martial of another Coast Guard yeoman, *Solorio v. U.S.*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), the Court said, "[t]he Coast Guard, of course, is a military service, and an important branch of the Armed Services. 14 U.S.C. § 1." *U.S. v. Johnson, supra*, 481 U.S. n. 12 at 691, 107 S.Ct. n. 12 at 2069.